WILLIAM H. WHEELOCK v. THE STATE.

" An out-house, where people resort," within the intent of the Statute against gaming, is a house not used as a dwelling or business house, where persons have resorted on more than one occasion, (for the purpose of playing cards,) or where more persons were present on one occasion than those who went for the purpose of playing.

In this, as in a preceding case where the judgment was affirmed, there was evidence of one instance only of playing in the house, from which the jury might infer that the house was resorted to on other occasions ; but in this case, there is the further negative proof, showing that the house was not resorted to on other occasions ; the judgment must therefore be reversed.

Appeal from Limestone.　Indictment for playing cards for money in an out-house where people resort.　The evidence was the same as in the two preceding cases, except in the particular mentioned in the Opinion, as to the testimony of the owner of the house.　The Court below charged the jury, that it was sufficient for the State to prove that the place where the playing took place was an unoccupied or vacant house, and that several persons were engaged in playing cards there, having gone to the place for that purpose, if the place was resorted to for gambling, or for any other purpose, by any persons whatever.

*G. F. Moore*, for appellant.　If the Judge intended to be understood that the visiting the house by the parties indicted sufficiently frequent, or by a sufficient number of persons on one occasion for any purpose, could make it a place where " people resort," I should not object to it as an abstract question of law," but it would certainly have no applicability to the facts of the case ; but if he means, as most clearly he does in the case numbered 551,* that where persons go to an out-house to play cards for one occasion only, the going there by

* Next but one, *Supra*.　REPS.

them is the resort contemplated by the law, he has, I think, clearly misconceived the proper construction of the Statute.

The out-houses referred to by the Statute could, I think, be of only two classes ; first, the out-house in legal and technical sense, within the curtilage of a main house, (grocery) resorted to by the visitors and patrons of the main house, (grocery) and thus a place where card playing would probably effect the public as much as if done in the main house ; (grocery ;) or secondly, as used in common parlance, a vacant or unoccupied building, so frequently resorted to, or by such numbers, that the exhibition of card playing in such a place would tend to injure the people who might resort there.

But the construction contended for by the State, would manifestly conflict with this entire spirit and policy of the law, and would make it penal for a few persons, in the most secret and private manner, to go into the most retired, unoccupied house and play cards, while if they played in the yard it would be perfectly innocent.  (Smith v. The State, 23 Ala. R. 39.)

Again, the very language of the Statute forbids the construction contended for by the State, that the going to the house by the persons playing, is the resort of the people contemplated by the Statute ; for one of the first rules for the interpretation of laws is that effect should be given to all the words of the Act, and that no part of it shall be regarded as surplusage, if it has a plain and apparent use.  Now the language of the Statute (Hart. Dig. Art. 1474) is " if any person shall play, in any out-house, where people resort," and if the words " persons shall play" and " people resort" refer to the same individuals, there was no necessity for the use of the last words, and the Statute would have been full and complete, and have the same meaning which it is contended it now has, if it had said, " if any person shall play in any out-house " he shall be deemed guilty, &c.

Who are the people there meant by the Statute ?  I say either " gamblers, their associates and pupils," (as the Attorney General says,) or any others resorting to the house in such num-

bers on one occasion, or on such a number of occasions as to give publicity to the place or game. (Roquemore v. The State, 19 Ala. R. 528 ; Feazles case, 8 Gratt. 592 ; Swallow v. The State, 20 Ala. R. 30 ; Bythwood v. The State, 20 Id. 47 ; Clark v. The State, 12 Id. 492 ; Com. v. Vandivere, 6 Gratt. 689.)

*F. L. Barziza*, also, for appellant.

*Attorney General*, for appellee. The cases numbered 402, 551 and 552, being against the same party, and having a striking family resemblance to each other, will be prosecuted together. The only question raised in any of them, is nearly the same in all. It has reference to the character of the *locus in quo* of the gaming. Whether or not it was either a public place, or an out-house where people resorted, in the meaning of the law of the offence.

In 551 and 552 it is difficult to perceive grounds of doubt worthy of a discussion. The instructions of the Court in these are full and liberal to the defendant, beyond the chance of exception by his counsel ; and verdicts having been found by the juries, upon proof sufficient, certainly, to sustain them, we decline hunting up a question to argue, where none presents itself. But I am notified by the counsel of appellant, that he will seriously contest the correctness of the charge of the Honorable District Judge in the remaining case, No. 402.

There can be no doubt that the building in question was an out-house in the sense of the gaming Acts, but was it one "where people resorted?" Resort when, and what people? Certainly, not people generally, and for general purposes, for that, at the first blush, is absurd, when the place to which is an out-house. The people meant, then, must be the gamblers, their pupils, associates and victims, and the time must be when they congregate there to game ; when they resort to these out of the way places in evasion of the certain penalty of playing in any of the houses characterized by the sure and obvious

quality of publicity. As the resort of people to an out-house, then, can only be sensibly regarded, in the Act we are considering, as intended to apply to the going there by people for gaming, it must apply, in point of time, when they go thither for that purpose, and therefore this is properly placed, in the indictments, in the imperfect tense, " where people then and there resorted ;" and thus the charge is fully and precisely sustained by the proof.

WHEELER, J. The present differs materially from the cases heretofore decided, in this : that it was proved that there was playing at the house but on one occasion, and that no one was present or witnessed the playing but those concerned, that the house was in a retired, secluded spot, at a considerable distance from any public street or highway, and that it had not been resorted to by persons on any other occasion ; in a word, the evidence excluded the supposition, or inference, that the house was resorted to by persons on any other occasion, or that there were any persons present on that occasion but those concerned in the playing. There was no room to infer from the fact that the place was resorted to by those persons on that occasion, (as in the case of Wheelock v. The State, No. 551,*) that it was so on any other occasion. The evidence positively negatived any such inference. The negative proof did not rest simply on the absence of knowledge of any other occasion by the witnesses ; that, perhaps, would not have been sufficient, whatever opinion a witness might express of his general knowledge upon such a subject. But it was proved by the proprietor of the house, that he had kept it locked up ; consequently it could not have been resorted to on other occasions without his knowledge. The evidence, therefore, amounted to proof of the negative, that it was not so resorted to. The case cannot be distinguished in principle from the case of Smith v. The State, (23 Ala. R.) where it was held, under a similar Statute, that the playing was not indictable.

* Next but one, *Supra.* REPS.

The Legislature would, perhaps, more effectually have suppressed the evil they aimed to suppress, if they had prohibited all gaming, in whatever place ; and certainly they would have rendered the escape of offenders, from a mere defect of proof, so difficult to obtain in this class of cases, less easy. But they appear to have intended the prevention of the evil example, rather than the suppression of the evil itself.

It is, with much fairness and justice, conceded by counsel for the appellant, that a house may be such a place of resort on one occasion, as to bring it fairly within the statutory description of a house " where people resort ;" and that it is difficult to fix any certain rule as to the number of persons or occasions which shall be sufficient. And we think the counsel correct, also, in maintaining that there must have been either more than one occasion, or more persons present on one occasion than those who went for the purpose of playing, to bring it within the mischief—the evil example—which the Statute was designed to suppress. To this latter proposition, however, there may be an apparent exception, where persons who happen to be present are induced to become interested in the playing, with a view to the evasion of the law. That, of course, would not shield the offenders ; but, if the offence were otherwise made out, would be an aggravation. But, as it is impossible to say with precision, how many more occasions than one, or persons, than those who go for the purpose of playing on one occasion, shall be sufficient, if it might be fairly inferred from the evidence that the house had been resorted to for such a purpose on any other occasion, or that on the particular occasion there had been one person present besides the . parties concerned, it might well be held that the evidence was sufficient to warrant the verdict, and the conviction right. If a house is frequently resorted to for gaming, it is reasonable to suppose that it will be known to persons other than those concerned, and there is the mischief of the evil example. Or, if one person is present on any occasion, other than the parties

concerned, it is, as to such person, equally within the mischief, as if there had been any number present. But where there was but one occasion, and no one was present but the parties themselves, we cannot hold it sufficient, of itself, to bring the house within the statutory description of a house "where people resort." We are of opinion, therefore, that the judgment be reversed and the case remanded.

Reversed and remanded.