LATTIMORE, Judge.
 

 Appellant was convicted in the county court of Ellis county of' playing at a game with cards, and -his punishment fixed at a fine of $10.00.
 

 
 *531
 
 The complaint and information contained four counts, one charging that he did unlawfully bet and wager at a game played with cards; another that he played at a game with cards at a place which was not a private residence occupied by a family; another that he remained in a gambling house where a gaming table and bank was kept and exhibited for the purpose of gaming, and the fourth, that he bet at a game played with dice called craps. An examination of the charge of the court shows that the only offense submitted to the jury was that of playing at a game with cards at a place which was not a private residence occupied by a family.
 

 There must be correspondence between the proof and the allegation. The facts before us are very meager and consist of the statement of Perry Jackson that in November 1923 ho went to the home of Wash Bolden, defendant herein, on three successive days and saw him and one Jack Kelly playing cards for money. Witness went there with Jake Eddlemon. He said that this was the place where Wash Bolden lived and that it was his private residence, and that he did not know who lived there with him. On one of his visits he saw the wife of Jack Kelly at said place. He said that he never saw any other parties at the house at any time beside those named. Jake Eddlemon testified for the State that he Avent with Perry Jackson to Bolden’s private residence on Sunday and Monday, two of the days mentioned by Jackson in his testimonj'-, and that he saw appellant and another negro on each occasion playing cards.
 

 This testimony hardly fills the measure of the law. The offense submitted to the jury was not that of betting and wagering at a game of cards, but Avas the playing of cards at a public place which is defined in Art. 548 of our P. C., among other things, as not being a private residence occupied by a family. HoAvever, in the definition of the offense as set out in said article, it is further stated that the provisions of the act which permits gaming at a private residence shall not apply in case such residence is one “commonly resorted to for the purpose of gaming.” There is nothing in the record to negative the idea that Jack Kelly lived at the same place as did appellant, nor is it suggested by the testimony that the public generally were permitted to resort to said house for purposes of gambling. If Kelly was an invited guest of appellant on the three occasions when he was seen at said house playing cards, this Avould not make of the place a public resort such as is contemplated by the statute. Terry v. State, 22 Texas Crim. App. 679; Pugh v. State, 55 Texas Crim. Rep. 463.
 

 Our books are full of decisions drawing the distinction clearly between a public place and a private residence. It is held that a room in a hotel occupied by a man becomes his private residence unless “commonly used for gaming.” Comer State, 26 Texas Crim. App. 512; Bordeaux v. State, 31 Texas Crim. Rep. 37. It is also
 
 *532
 
 said that in ordere to make a private residence become a gaming 'house, that is, a public place, it must be commonly resorted to for the purpose of gaming. Morgan v. State, 42 Texas Crim. Rep. 422; Herrin v. State, 50 Texas Crim. Rep. 351.
 

 Being of opinion that there is a variance between the offense submitted to the jury and the evidence offered in support thereof, the judgment will be reversed and the cause remanded.
 

 Reversed and remanded.