The STATE of Texas, Appellant,

v.

James W. TAYLOR, Appellee.

No. 430–90.

Court of Criminal Appeals of Texas,
En Banc.

March 6, 1991.

Albert A. Pena, III, Corpus Christi, for
appellee.

Grant Jones, Dist. Atty., Corpus Christi,
Robert Huttash, State's Atty. and Matthew
W. Paul, Asst., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellee was indicted for the felony of-
fense of keeping a gambling place pro-
scribed by Tex.Penal Code Ann. § 47.04(a).
Appellee moved to dismiss the indictment
because the underlying statute was uncon-
stitutionally vague. The trial court grant-
ed appellee's motion and dismissed the in-
dictment. The Court of Appeals affirmed
the trial court's order. *State v. Taylor*,
787 S.W.2d 120 (Tex.App.—Corpus Christi
1990). We granted the State's petition pur-
suant to Tex.R.App.Pro. 200(c)(4).[1]

The indictment alleged, in pertinent part,
that appellee:

1. The State's sole ground for review alleges:
"The Court of Appeals erred in declaring Tex.Pe-
nal Code Ann. Section 47.04(a) unconstitutional-
ly vague."

did then and there knowingly use certain property under the control of [appellee], namely, a building located at [address] as a gambling place, namely for the telephonic receiving of bets....

V.T.C.A. Penal Code, § 47.04(a), provides as follows:

(a) A person commits an offense if he knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used.

The Court of Appeals relied on *Adley v. State*, 718 S.W.2d 682 (Tex.Cr.App.1985), where this Court focused on the difficulty distinguishing between the term "makes"[2] a bet as defined in V.T.C.A. Penal Code, § 47.02[3] and the term "receives" a bet as defined in the former V.T.C.A. Penal Code, § 47.03.[4] This Court held that the same conduct could arbitrarily give rise to either a felony or a misdemeanor prosecution, depending upon whether the conduct was characterized as making or receiving a bet. Therefore, § 47.03(a)(2), insofar as it prohibited receiving a bet, was held to be unconstitutionally vague and unenforceable as a penal sanction.[5] *Adley*, 718 S.W.2d at 685.

In the instant cause, the Court of Appeals found § 47.04(a) unconstitutionally vague for three reasons. First, the statutory scheme failed to define when a person who receives a bet in a place under his control should be prosecuted for a felony under § 47.04(a) (Keeping a Gambling Place), or for a misdemeanor under § 47.02 (Gambling). *Taylor*, 787 S.W.2d at 122. Second, a person could be prosecuted under § 47.04(a) when his conduct is nothing more than a violation of § 47.02 in a private place. *Id.* Third, § 47.04(a) was meant to punish one who furnishes a location for bookmaking and, therefore, "must exclude places where bet receivers are not engaged in bookmaking." *Id.*

▪ Initially, the constitutional defect found by the Court of Appeals was the supposed failure of § 47.04(a) to distinguish between conduct punishable as a felony and conduct punishable only as a misdemeanor. The State argues that the Court of Appeals erroneously relied on *Adley* for its decision because the "make/receive" ambiguity is not present under § 47.04(a). Section 47.04(a) prohibits the knowing use of property as a gambling place which "means any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the *making* or settling of bets, the *receiving*, holding, recording, or forwarding of bets or offers to bet, or ..." V.T.C.A. Penal Code, § 47.01(2). The statute thus punishes equally both the use of a location for the "making" of bets and the use of a location for the "receiving" of bets. There-

<hr>

2. All emphasis supplied throughout the opinion, unless otherwise noted.

3. Section 47.02 Gambling, read in part:
(a) A person commits an offense if he:
(1) *makes* a bet on the partial or final result of a game or contest ...
* * * * *
(c) An offense under this section is a Class C misdemeanor. (Emphasis added.)

4. Section 47.03 Gambling Promotion, in relevant part provided:
(a) A person commits an offense if he intentionally or knowingly does any of the following acts:
* * * * *
(2) *receives*, records, or forwards a bet or offer to bet,
(b) An offense under this section is a felony of the 3rd degree. (Emphasis added.)

5. In response to *Adley,* in 1987 the Legislature amended § 47.03 to provide as follows:
Section 47.03 Gambling Promotion
(a) A person commits an offense if he intentionally or knowingly does any of the following acts:
* * * * *
(2) engages in bookmaking;
(b) In this section "bookmaking" means:
(1) the receiving and recording of or the forwarding of more than five bets or offers to bet in one 24–hour period;
(2) the receiving and recording of or the forwarding of bets or offers to bet totalling more than $1,000 in one 24–hour period; or
(3) a scheme by three or more persons to receive, record, or forward bets or offers to bet.

fore, we agree with the State, the "makes/receives" a bet vagueness found by this Court in *Adley* does not exist in § 47.04(a).

 Additionally, the Court of Appeals found that under this indictment "[p]resumably, a person could be prosecuted under section 47.04 when his conduct does not constitute anything more than the violation of section 47.02 in a private place." *Taylor,* 787 S.W.2d at 122. In its analysis the Court of Appeals claimed that "the State could obtain a conviction of [appellee] for Keeping a Gambling Place on evidence which merely showed that he 'received bets' at a certain building." *Id.* We disagree. Under the language of the indictment, the State could not obtain a conviction merely by showing that appellee received bets at a certain building. Under the indictment, and in accord with § 47.04(a), the State was required to prove that appellee used the location under his control as a gambling place. That is, the State had to prove that appellee was engaged in a certain form of gambling promotion, namely, using the location for the purpose of receiving bets.

Finally, the State urges that § 47.04(a) punishes different activity from § 47.02 because § 47.04(a) prohibits a type of *gambling promotion,* the furnishing of a location, while § 47.02 merely proscribes *gambling.* We agree. The Court of Appeals asserted that § 47.04(a) was designed to "punish the person who furnishes a location for bookmaking." *Id.* Thus, the Court of Appeals concluded that since the indictment only alleged that appellee controlled a place that "received bets," without specifying that he controlled a place where the act of bookmaking occurred, the trial court correctly dismissed the indictment.

The legislative intent behind § 47.04(a) is explained in the Practice Commentary to that provision:

> This section defines a special variety of *gambling promotion*—furnishing a location—that analytically is a form of complicity responsibility. (The 1970 proposed version of this chapter would have

so handled it, with a conceptual definition of gambling promotion buttressed with traditional complicity principles to catch the aider and facilitator.) It covers not only the owner-operator, whose conduct at the location will no doubt violate the general promotion section, but the true facilitator as well, one who has no connection with the actual gambling but rents the premises with knowledge that they will be used for that purpose.

The statutory scheme is simple: § 47.02 prohibits *gambling* (making bets), § 47.03 prohibits *bookmaking* (receiving bets) and § 47.04 proscribes a type of *gambling promotion,* i.e., keeping a gambling place. Each provision has its own distinct purpose and scope. It is clear that through § 47.04(a), the legislature intended to punish the party responsible for either *using or permitting another to use a location* for the purposes of promoting gambling more harshly than the party engaged in mere gambling. We hold, therefore, that § 47.04(a) is not unconstitutionally vague.

The judgments of the Court of Appeals and the trial court are reversed and the cause remanded to the trial court.