Ronald Gerald ADLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 786–84.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 6, 1985.

Rehearing Denied Feb. 26, 1986.

Melvyn Carson Bruder, Edgar A. Mason,
Dallas, for appellant.

Henry Wade, Dist. Atty., and Karen Chilton Beverly, and Mike Miller, Asst. Dist.
Attys., Dallas, Robert Huttash, State's
Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted for the felony offense of gambling promotion. V.T.C.A. Penal Code, § 47.03(a)(2). Appellant pled not guilty before the court and the court, based upon stipulated evidence, found appellant guilty and assessed a three year prison term, probated. The Dallas Court of Appeals affirmed his conviction in a published opinion. *Adley v. State,* 675 S.W.2d 240 (Tex.App. *5th* 1984). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in two respects.

Specifically, appellant alleges that the trial court reversibly erred in failing to grant his motion to quash wherein he alleged that the statutory language of "receiving a bet" was vague and that the allegation that he received a bet was subject to varied interpretation, thereby failing to give him requisite notice. He also challenges the sufficiency of the evidence to support his conviction, but because we believe that § 47.03(a)(2) is unconstitutionally

vague and ambiguous, we find it unnecessary to reach that issue. We will reverse the court of appeals.

The court of appeals specifically held that § 47.03(a)(2), supra was not unconstitutionally vague and ambiguous. That court relied upon *Powell v. State*, 624 S.W.2d 818 (Tex.App.—Beaumont, no pet.) The holding in *Powell*, supra can be characterized as dicta since the defendant was not charged with a violation of § 47.03(a)(2). We do not find the Beaumont Court of Appeals holding in *Powell* persuasive, nor is it controlling on this Court.[1]

The claim presented here centers upon a comparison of V.T.C.A. Penal Code § 47.02(a)(1) and § 47.03(a)(2). Appellant claims that the conduct of "receiving a bet," prohibited in § 47.03(a)(2) as a felony, and the conduct of "making a bet" prohibited in § 47.02(a)(1) as a misdemeanor, are functionally the same conduct. He contends an individual cannot determine whether his conduct constitutes a felony or a misdemeanor, thereby rendering the statute void. Appellant argues that, in order to avoid such a conclusion, this Court should interpret § 47.03(a)(2) as requiring *at least three parties* to the transaction, thereby distinguishing § 47.02(a)(1), which only requires two parties. We cannot accept appellant's argument that § 47.03(a)(2) requires three parties; we believe such an interpretation defies logic and ignores legislative intent. Nonetheless, we believe the legislature has failed to sufficiently define the conduct of "receiving a bet" so as to limit law enforcement and prosecutorial discretion in prosecuting only the professional, exploitive gambler under § 47.03 (a)(2).

This Court has not previously addressed the issue appellant raises. We have held that an indictment charging commission of conduct prohibited by § 47.03(a)(2) must allege the means used in receiving or recording a bet. *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr.App.1981). Furthermore, in *Smith v. State*, 658 S.W.2d 172 (Tex.Cr.App.1983) we held that a defendant was entitled to sufficient facts to give him precise notice of the offense for which he is charged. We also specifically refused to rule on the constitutionality of "making a bet", § 47.02(a)(1) and "receiving a bet", § 47.03(a)(2). We believe the time has come for this determination.

In 1974, the Texas Legislature enacted the Texas Penal Code, and in doing so, made various changes in the law pertaining to gambling. Prior to 1974, the Penal Code criminalized gambling in separate and distinct offenses for all the various forms of gambling.[2] The statutes were confusing to say the least. In enacting Chapter 47 of the new Code, the legislature sought to simplify the law.[3] More importantly, the legislature, for the first time, sought to decriminalize social gambling and provide minimal penalties for the individual who utilized the services of the professional gambler. See generally practice commentary to Chapter 47, V.T.C.A. Penal Code, § 47.01, et seq.

In pertinent part, the statutes provide as follows:

"47.01 Definitions

"In this chapter:

"(1) 'Bet' means an agreement that, dependent on chance even though ac-

---

1. We note that in the court of appeals the appellant directly and specifically argued in his ground of error No. 1 that § 47.03(a)(2) was unconstitutional. In his petition for discretionary review appellant, while framing his ground of error in different language, nonetheless incorporated ground of error No. 1 in his petition for discretionary review. While appellant urges the indictment is unconstitutionally vague, it is clear that if the indictment is unconstitutionally vague, then, so too is the statute, for the indictment tracks the statutory language.

The indictment charged, inter alia, that the appellant "did intentionally and knowingly re-

ceive a bet, by telephone, placed by Fred Cochran on the final result of a professional football game to be played between the Cleveland Browns and Philadelphia Eagles ..."

2. See generally TEX.PENAL CODE ANN., art. 615, et seq (1925). The old penal code had over fifty separate sections regarding gambling.

3. Texas Penal Code, A proposed revision, State Bar Committee; Com. Foward, p. IV–V (West 1970).

companied by some skill, one stands to win or lose something of value....

"...

"47.02 Gambling

"(a) A person commits an offense if he:

"(1) makes a bet on the partial or final result of a game or contest or on the performance of a participant in a game or contest;

" ...

"(b) It is a defense to prosecution *under this section*[4] that:

"(1) the actor engaged in gambling in a private place;

"(2) no person received any economic benefit other than personal winnings; and

"(3) except for the advantage of skill or luck, the risks of losing and the chance of winning were the same for participants.

"(c) An offense under this section is a Class C. misdemeanor.

" ...

"Section 47.03 Gambling Promotion.

"(a) A person commits an offense if he intentionally or knowingly does any of the following acts:

" ...

"(2) receives, records, or forwards a bet or offer to bet;

" ...

"(b) An offense under this section is a felony of the 3rd degree."

■ The Texas Legislature, in enacting the above-referenced Chapter 47, failed to define "make" or "receive" Therein lies the problem as the appellant sees it. Appellant argues that the notion of the existence of a "bet" implies an agreement. An agreement necessarily involves at least two parties. Appellant relies on the definition of receive, to-wit: "to come into possession of." Webster's Collegiate Dictionary (1977). Thus, appellant argues, that the receiver of a bet must receive an agreement entered into by *two other parties.* This notion ignores the reality of legislative history. To require the receiver of a bet to only be liable for receiving a bet made by two other parties is to limit the application of this section to a class of gambling that is non-existent. Moreover, we fail to see how a receiver of a bet made by *two other parties* can be classified as an exploitive gambler; the gambler whose conduct the legislature intended to forbid.

We believe appellant incorrectly isolates "receive" and "makes" without taking cognizance of what the intent of the legislature was in using this terminology. Section 47.03 defines and prohibits exploitive gambling. Practice Commentary Searcy and Patterson V.T.C.A. Penal Code, § 47.-03. We agree with the State when it argues that one can make and receive a bet simultaneously. For when one receives an offer to bet and accepts said offer, one becomes a party to an agreement, i.e., the maker of a bet. One can, through the generally understood meaning of this language, be both a maker and receiver of a bet. Therein lies the problem.

■ The legislature, in punishing the receiver of a bet, sought to punish the conduct which, under the old code, was defined as bookmaking. Art. 652a prohibited the offense of bookmaking. "Any person who takes or accepts or places for another a bet or wager of money ...; or any person who offers to take or accept or place for another any such bet or wager ... shall be guilty of bookmaking." Art. 652a, supra, (repealed). Thus, we believe the legislative intent in drafting § 47.03(a)(2) in its present form was to punish the act of bookmaking. 20 Tex.Jur.3rd § 1362; see also, Webster's Dictionary, supra, which defines bookmaking as "one who determines odds and *receives and pays off bets.*"

The old code did not distinguish between the social gambler and the commercial

gambler. Nor was there any defense to gambling.[5] All gambling was prohibited. Thus, the broad language used to define bookmaking was basically inconsequential. While the language in the present code is synonymous with that in the old code, we find that it does not limit bookmaking to just the commercial gambler. The legislature, in enacting § 47.03, sought to limit felony penalties to only those individuals who engaged in gambling commercially, or, as the Practice Commentary notes, the "exploitive gambler." By using language synonymous with the old bookmaking statute without limiting or explaining its application to § 47.03(a)(2), we find that the legislature has painted with too broad a brush.

■ A statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally v. General Const. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Passmore v. State*, 544 S.W.2d 399 (Tex.Cr.App.1976); *Baker v. State*, 478 S.W.2d 445 (Tex.Cr.App.1972); *Ex Parte Chernosky*, 153 Tex.Cr.R. 52, 217 S.W.2d 673 (1949).

A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), or if it "encourages arbitrary and erratic arrests and convictions." *Papachristou*, supra; *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Herndon v. Lowry*, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937). Either is an independent ground. See also, *Goocher v. State*, 633 S.W.2d 860 (Tex.Cr.App.1982); *Bates v.*

*State*, 587 S.W.2d 121 (Tex.Cr.App.1979); *McMorris v. State*, 516 S.W.2d 927 (Tex.Cr. App.1974).

Clearly, in any betting situation, there are a minimum of two parties involved; one being the maker of the bet and the other the receiver. For example, A and B attend a football game. B asks A to enter into an agreement regarding the final result of the football game. B bets $25.00 that team X will win the game. A accepts B's offer. Once accepted, A and B have made a bet. Clearly, under the terms of § 47.02(a)(1), supra, B and A are both makers of a bet. Likewise, A has received B's offer to bet and, upon acceptance, has received a bet under the terms of § 47.-03(a)(2). B's conduct is only punishable as a misdemeanor. A, having additionally received an offer to bet, is punishable as a felon. Applying this example to the indictment and stipulated facts in the instant case, appellant finds himself in the exact position as A. Due process prohibits such vagueness and arbitrariness.

We hold, therefore, that § 47.03(a)(2), insofar as it prohibits receiving a bet, is unconstitutionally vague and unenforceable as a penal sanction. Accordingly, the judgments of the court of appeals and the trial court are reversed and the cause is remanded to the trial court for dismissal of the indictment.[6]

WHITE, J., concurs.

CLINTON, Judge, dissenting.

In the petition for discretionary review we granted, appellant charges that the court of appeals ignored the crux of his contention concerning statutory construction and, instead, "answered an argument which the appellant never advanced (i.e., that § 47.03(a)(2) was unconstitutionally vague)." Petition, at 4. As I read the

---

5. Interestingly, the proposed code did originally include the defense stated in § 47.02(b), supra, for *all* gambling offenses. This was deleted due to the objection that such a defense would make prosecution very difficult. Tape of Sub-committee Hearing on chapter 47. Sub-committee on Criminal Matters, March 7, 1973.

6. Given our holding that § 47.03(a)(2) is unconstitutional, we need not determine whether the evidence was insufficient under § 47.03(a)(2) since no further prosecution may be had under a void statute.

opinion of the court of appeals, the court overruled his ground of error complaining that the trial court erred in denying his motion to quash the indictment on grounds that its allegations are vague and ambiguous. It did not decide that the statute is constitutional. *Adley v. State,* 675 S.W.2d 240 (Tex.App.—Dallas 1984).

Traditionally, the last action this Court or any other judicious appellate court will take is to address a claim that a statute is unconstitutional. Of course we are presently witnessing that tradition being breached by expedient sua sponte attacks on legislative acts in disfavor, but still cling to the hope that they are but expressions of the moment, ending when the particular job is done.

Adhering to the traditional approach in deciding questions of constitutionality of statutes, I respectfully dissent.

State's motion for rehearing on petition for discretionary review denied.

CLINTON, J. dissents joined by McCORMICK, J.

CLINTON, Judge, dissenting.

In its motion for rehearing the State urges a construction of the statutes that would sustain constitutionality of V.T.C.A. Penal Code, § 47.03(a)(2). The majority disdains that approach, notwithstanding its antiquity in jurisprudence of practically every jurisdiction as well as this one. See 53 Tex.Jur.2d 277–278, Statutes, § 184.

For reasons stated in my dissenting opinion on original submission we should take that approach and, having taken it, uphold validity of § 47.03(a)(2) on the construction given the statutes in my dissenting opinion in *Dowdy & Dowdy v. State,* 713 S.W.2d 350 (Tex.Cr.App.).

Because the majority causes the Court needlessly to strike down a statute intended and designed by the Legislature in exercise of its police power to advance significant public policy considerations pertaining

to health, safety, peace and welfare of the citizens of this State, I dissent.

McCORMICK, J., joins.